# Wytheville.

## HOGE & ALS. v. JUNKIN, COM'R, & ALS.

### July 24, 1884.

1. PRACTICE IN CHANCERY—*Enforcement of Liens.*—Decree to sell lands to enforce liens, without first, by account taken, ascertaining amounts and priorities of all encumbrances thereon, is premature and erroneous. *Shultz & als.* v. *Hansbrough & als.*, 33 Gratt. 567.

2. IDEM—*Heirs—Ancestor's Lands.*—Decree to sell share of an heir in his ancestor's lands, to pay heir's debts, without first ascertaining the amount of such share by an account taken of the ancestor's debts, and of the advancements, if any, to the several heirs, is premature and erroneous. *Ryan's Adm'r* v. *McLeod & als.*, 32 Gratt. 367.

3. IDEM—*Pleading—Demurrer.*—As a general rule, when a demurrer to a bill or other pleading has once been overruled by the court, no other demurrer should afterwards be received to the same pleading. Code 1873, ch. 167, § 33, amended March 27, 1876, Acts 1875-6, p. 209.

Appeal of J. E. Hoge and B. L. Hoge, infant heirs of James F. Hoge, deceased, by their mother and next friend, Eliza J. Hoge, from two decrees of circuit court of Montgomery county, entered May 15th, 1879, and May 18th, 1881, in two chancery causes consolidated and heard together. In the first Seddon & Bruce are complainants, and R. H. Hoge, the appellants and others are defendants. In the second the appellants are complainants, and G. G. Junkin, commissioner, Seddon & Bruce and others are defendants.

James F. Hoge died in 1873 intestate, leaving a widow and *seven* children, including the appellants, and owning real and personal estate, and owing debts. J. C. Snidow qualified as his

administrator, but died, and R. H. Hoge, one of his sons, quali-
fied as administrator *de bonis non.* The administration accounts
have never been settled, nor has the real estate been partitioned
among the heirs. In 1876 R. H. Hoge conveyed his interest in
the real estate to J. W. S'elton, in trust to secure debts to Law-
son & Kinnier; and, a few months later, to J. Hampton Hoge,
in trust to secure a debt to his brother, James Hoge. In 1877
Seddon & Bruce filed their bill to enforce liens of their judg-
ments against R. H. Hoge on his interest in said real estate,
alleging his interest to be *one-sixth* of the whole. In that suit
a decree was entered for an account of liens on R. H. Hoge's
interest in said real estate. Report was returned in April,
1878, and confirmed, with some exceptions. On 15th May,
1878, decree was entered annulling the deed of trust to secure
debt to James Hoge as fraudulent, and directing J. W. Shelton,
as special commissioner, to sell R. H. Hoge's interest in said
real estate, which was decreed to be one undivided *sixth.* Shel-
ton made sale accordingly; but by decree entered in January,
1880, the sale was set aside, and a resale ordered to be made by
G. G. Junkin, special commissioner, substituted for J. W. Shel-
ton. In March, 1880, the appellants brought their bill, alleging
that James F. Hoge died much indebted; that his personalty
was insufficient to pay his debts; that part of his realty would
have to be sold to pay his debts, and that R. H. Hoge's share
would have to contribute to their payment; that in his lifetime
he had made advancements to R. H. Hoge, and that the latter's
interest was only *one-seventh*, subject to said charges, and pray-
ing for an injunction to the decreed sale until the intestate's
debts and R. H. Hoge's interest in said realty were ascertained.
The injunction was granted. Appellants filed their answer to
Seddon & Bruce's bill, and set up the same facts. The defend-
ants demurred to the appellant's bill on 20th May, 1880, and
the demurrer was overruled. The two causes came on to be
heard together on 18th May, 1881, when the defendants *again*
demurred to the appellant's bill. The court sustained the de-

murrer and dismissed the bill, and directed Junkin, commissioner, to proceed with the resale as previously decreed. From these decrees the said J. E. Hoge and B. L. Hoge obtained from one of the judges of this court an appeal and *supersedeas.*

*T. E. Sullivan* and *J. Hampton Hoge*, for the appellants.

No counsel appeared for the appellees.

RICHARDSON, J., delivered the opinion of the court:

James F. Hoge, late of Montgomery county, died in 1873 intestate, leaving a widow, Mrs. Eliza J. Hoge, and the following children, to wit: Robert H. Hoge, James Hoge, Geo. T. Hoge, Joseph E Hoge, Jane N. Hoge, Lucy Hoge, and Ann, wife of John C. Snidow, deceased. At the time of his death said James F. Hoge was the owner of several tracts of land in said county of considerable value, and also of certain personal estate

Subsequent to his father's death, to wit: on the 1st day of June, 1876, said Robert H. Hoge conveyed his interest inherited by him, in the lands of which his father died seized and possessed, to John W. Shelton, trustee, to secure certain debts due from him to Lawson & Kinnier. It further appears that said Robert H. Hoge, on the 28th day of September, 1876, made another deed, by which he conveyed his interest in said lands, so inherited by him, to J. Hampton Hoge, trustee, purporting to secure to James Hoge a debt of $4,000.

In October, 1877, William C. Seddon and T. Seddon Bruce, merchants and partners under the style of Seddon & Bruce, for themselves and on behalf of all other creditors of Robert H. Hoge and James B. Puckett, who should come in and contribute to the costs of suit, filed their bill in the circuit court of Montgomery county, setting forth that they were judgment creditors of Robert H. Hoge and James B. Puckett in the sum of $153.36, with interest from the 2d day of December, 1876, and of $8.56

costs, by virtue of a judgment recovered by them against said
Hoge and Puckett at the May term of the said circuit court,
1877, and that upon said judgment a writ of *fieri facias* issued
and was returned " no effects found."

The said bill further alleges that said Robert H. Hoge is the
owner, by inheritance, of one undivided sixth part of the real
estate of which his said father, James F. Hoge, died·seized and
possessed.   The bill refers to said two trust deeds executed by
Robert H. Hoge—the one to secure Lawson & Kinnier, and the
other to secure said James Hoge.   As to the first of which the
bill alleges that the greater portion, if not all, the debts secured
thereby had been paid, and as to the latter, charges that no debt
was due from Robert H. to James Hoge when said deed was ex-
ecuted, and that the same was fraudulent and void, because
made to hinder, delay, and defraud the creditors of said Robert
H. Hoge.

The complainants, in their bill, further allege that James
B. Puckett, one of their said judgment debtors, so far as known
to them, was not the owner of any estate, real or personal,
and they suppose he is insolvent.   And the bill further sets
forth that dower had never been assigned to the said widow
in the lands of which her said husband died seized, and asked
that her dower be assigned therein, partition of the lands made,
and the part allotted to Robert H. Hoge sold to pay off the liens
upon it, including the judgment lien of the complainants, and
for general relief.   To said bill the parties made defendants were
Robert H. Hoge, James B. Puckett, John W. Shelton, trustee,
Lawson & Kinnier, J. Hampton Hoge, trustee, James Hoge,
Mrs. Eliza J. Hoge, Ann Snidow, George T. Hoge, Jane N.
Hoge, Joseph E. Hoge, and Lucy Hoge, the last two being in-
fants.

None of the adult defendants having then answered, it seems
that the cause having been matured and set for hearing, and
the infant defendants having answered by their *guardian ad
litem,* came on to be heard on the 8th day of December, 1877,

when a decree was entered directing John C. Wade, one of the commissioners of the court, to take and report, (1) an account showing whether any or any part of the debts secured by the trust deed to John W. Shelton, trustee, had been paid off and satisfied; (2) an account showing whether the debt secured by the deed to J. Hampton Hoge, trustee, to James Hoge, was fictitious or genuine in whole or in part, and what part thereof remained unpaid; (3) an account showing whether or not the real estate of James F. Hoge, deceased, could be partitioned in kind; if so, the value of the interest therein of Robert H. Hoge—its annual rental value, and (4) an account of the liens upon the interest of Robert H. Hoge in the said real estate, in their order of priority; and the cause was continued.

In response to said decree, the commissioner, on the 4th day of April, 1878, reported (1) that of the debts secured by the deed of trust to secure Lawson & Kinnier, there was paid, on the day preceding the date of his report, the sum of $23, which was all that had been paid thereon, and leaving due to said Lawson & Kinnier, as reported, the sum of $494.33, principal and interest, as of the date of said report.

(2). As to the deed of trust to J. Hampton Hoge, trustee, to secure to James Hoge a debt of $4,000, the commissioner returned with his report the depositions of several witnesses taken pending the investigation before him, and an account or list of items furnished by James Hoge, and made a part of his deposition, as the foundation of said $4,000 debt so secured; which list of items in the aggregate falls far short in amount of the debt secured, and is, as explained by the depositions of Robert H. Hoge, the grantor, and of James Hoge, the beneficiary, unsatisfactory, and fails to show that the transaction was founded in good faith and fair dealing. And the commissioner, failing to respond directly to the requirement of the decree of reference touching the *bona fides* of the transaction, contents himself with saying: "From the *amount of the list* so furnished, I have deducted the item of $700, amount advanced Robert H. Hoge by his

father James F. Hoge, deceased, and the interest on same, $168, and have put down the balance on my list of the liens reported." Thus the commissioner (by what process it is difficult to understand), inferentially reports that only a part of the $4,000 debt is genuine ; from which he deducts the above amount of advancements, says nothing as to the character of the residue of the debt, and sets down in his list of liens the sum of $1,720.50 principal, and $155.42 interest as a valid subsisting lien in favor of James Hoge by virtue of said trust deed.

(3). The commissioner reports that the lands of James F. Hoge, deceased, were susceptible of partition between his heirs, but that it would be detrimental to several interests; and that Robert H. Hoge's interest, without the dower (which had then been assigned), was worth about $2,300, and would rent for about $100 per year. And the commissioner reported the whole amount of liens to be $2,941.23. The report of the commissioner was excepted to by the complainants in so far as any thing was allowed by the commissioner on account of the *bond* of $4,000, secured to James Hoge by said trust deed, upon the ground that the evidence returned by the commissioner showed that there was no valuable consideration for said bond, and that the same was fraudulent and void.

On the 15th day of May, 1879, the cause came on again, when the circuit court, on inspection of said commissioner's report and the depositions returned therewith, by its decree struck from the list of liens reported the entire amount aforesaid reported in favor of James Hoge, and declared the deed of trust from Robert H. Hoge to J. Hampton Hoge, trustee, to secure to James Hoge said $4,000, to be fraudulent and void as to the creditors of said Robert H. Hoge, and struck from the list of liens reported the amount reported in favor of James Hoge; and in all other respects confirmed the report of the commissioner; directed J. W. Shelton, trustee in the deed to secure Lawson & Kinnier, to proceed to sell, *as the interest of Robert H. Hoge therein, one sixth* of the lands of which James F. Hoge died seized, the sale to be

made first of said Robert H. Hoge's interest outside of the widow's dower; and, in the event that should prove inadequate to discharge the liens reported, that then the commissioner, at the same time and place, should sell the interest of the said Robert in the land assigned for dower to said widow.

The trustee and commissioner, J. W. Shelton, made the sale and reported it to court. In his report he says: "I first offered his (Robert H. Hoge) interest in the lands aforesaid not assigned as dower, and it was knocked off to Robert H. Hoge, as the highest bidder, at $1,000. This being insufficient to pay off the debts proved, I then offered his interest in the lands assigned as dower, and the same was knocked off to him (Robert H. Hoge) at $300. He failed to comply with the terms of sale. I waited on him two hours or more, and finding that he could not, or would not, comply with the terms of sale, I again offered it for sale on the same day and in the same manner, *he* being present and *objecting* to the sale because a *greater interest* was sold than he owned, as he alleged. At the second exposure, Mr. George W. Fagg and T. W. Spindle became the purchasers, being the highest bidders of the first and second parts; the first part not being sufficient to pay off the debts. * * * The interest in the portion not assigned as dower went off at $700, and the other at $365."

On the 12th day of January, 1880, the cause came on again, when a decree was entered confirming said report of sale, there being no exceptions thereto, directing the application of the small balance remaining in the hands of the commissioner and trustee of the cash payment received by him, and appointing George G. Junkin receiver, and directing him to collect the deferred payments of the purchase money as they fell due, and to pay off the liens reported against Robert H. Hoge, as fixed by the decree of May, 1879.

On the 13th day of January, 1880, the order of continuance entered the previous day was set aside, and thereupon J. Hampton Hoge and James Hoge, offered an upset bid of $1,300 for

the interest of Robert H. Hoge, sold as aforesaid, which bid was received by the court upon the usual terms. And, thereupon, the circuit court entered its decree setting aside the sale already made and appointing George G. Junkin a commissioner to resell said interest of Robert H. Hoge according to the terms of the previous decree for that purpose.

On the 17th day of March, 1880, Joseph E. Hoge and B. L. Hoge, infant children of James F. Hoge, deceased, who sued by their next friend, Eliza J. Hoge, obtained a writ of injunction from the judge of said circuit court, restraining said commissioner, Junkin, from making said resale, until it should be ascertained what the interest of Robert H. Hoge is in the lands of James F. Hoge, deceased, and until after a settlement of the administration accounts of Robert H. Hoge, and the settlement of the outstanding debts against the said James F. Hoge, deceased, and the question of advancements to his children in his lifetime by said James F. Hoge; all of which matters were brought particularly to the attention of said circuit court in the bill of said Joseph E. and B. L. Hoge by their next friend, Eliza J. Hoge.

On the 14th day of May, 1880, the original suit of Seddon & Bruce against Robert H. Hoge and als., came on again, when, by leave of court, J. Hampton Hoge and James Hoge filed their petition in that cause, setting forth substantially the matters brought to the attention of the court by the bill of injunction of Joseph E. and B. L. Hoge by their next friend, to wit: that James F. Hoge left a widow and *seven* children instead of *six*, and that said Robert H., one of them, therefore had an interest of one-seventh instead of one-sixth in the lands of his father, said James F., and this subject to deduction by the amount of advancements made to him by his father ; that said interest was liable justly to be further reduced by outstanding debts against the estate of James F. Hoge ; that James F. Hoge, in addition to said land, left considerable personal property ; that John C. Snidow duly administered upon the personal estate, and before

fully administering the same departed this life; that Robert
H. Hoge then qualified as administrator *de bonis non* of James
F. Hoge, and a considerable amount of personal property passed
into his hands, and that he had never settled his accounts as
such administrator, and insisting that the decree theretofore
rendered in said cause, ascertaining the interest of said Robert
H. Hoge, and directing a sale thereof, was wrong; and referring
to the order of March 17th, 1880, restraining said commissioner
from making the resale theretofore decreed, prayed that they,
the said J. Hampton Hoge and James Hoge, the petitioners
aforesaid, be released from said upset bid, and the money de-
posited by them with the clerk, as one of the conditions upon
which said bid was received, be refunded to them. And, there-
upon, said circuit court then entered an order, which, after
referring to said petition, is in these words: "And the court
being of opinion that the questions raised by the bill of Joseph
E. Hoge and als. against George G. Junkin, trustee, &c., and als.,
should first be settled before determining upon the merits of this
petition, doth defer the same until such questions are settled."
Yet, notwithstanding this plain recognition of the propriety,
and even necessity, of first settling these matters before the real
interest of Robert H. Hoge could be ascertained and subjected
to the payment of his debts, no inquiry was directed, no steps
taken, so far as disclosed by the record, to settle them. At the
same term of the said circuit court, to wit: May 14th, 1880, said
Joseph E. and B. L. Hoge filed their answer to the bill of Seddon
& Bruce, in which they admit the death and intestacy of their
father, Jas. F. Hoge, admit that he owned the real estate referred to
in the bill, as to which they say no partition had been made be-
tween the heirs, but that a suit was then pending in that court for
that purpose, in the name of Ann E. Snidow and als. against
Robert H. Hoge and als., to which the court was specially refer-
red. And said answer, disclaiming all knowledge of the debts
of the complainants against Robert H. Hoge, denies that Robert
H. Hoge was the owner of one-sixth of the real estate of which

Jas. F. Hoge died seized, and, in other respects, reaffirms the matters brought to the attention of the court by their said bill of injunction, and also by the petition of J. Hampton and James Hoge; and prays that in administering the said Robert's interest in said real estate, that their interests may be protected by the court. The said cause of Jos. E. Hoge and als. having been matured, came on to be heard on the 20th day of May, 1880, upon the bill and exhibits filed therewith, and the demurrer of the defendants to said bill and joinder therein; and on consideration the said circuit court overruled said demurrer and continued in force the injunction theretofore awarded.

And again, on the 18th day of May, 1881, the two causes of Seddon & Bruce against R. H. Hoge and als., and J. E. Hoge, &c., against G. G. Junkin and als., came on to hearing together, when it seems the demurrer in the last-named cause was repeated, and though no amended or supplemental matter had been brought in, the demurrer was sustained, the injunction dissolved and the bill dismissed, and the petition of J. Hampton Hoge and James Hoge, in the first named cause, was also dismissed by the decree then entered, and the commissioner, Junkin, directed to proceed with the resale of the interest of Robert H. Hoge in the real estate of Jas. F. Hoge, as directed by the decree rendered at the January term, 1880, and the first named cause was continued. From the decree thus rendered an appeal was allowed by one of the judges of this court, and the case is here for disposition.

The record in this case, from beginning to end, presents a singular series of errors persistently pursued. The true history of the case, stated above, as disclosed by the record, at once marks it as a case in which, upon every point raised by the petition for appeal, a reversal of the decree complained of is demanded upon principles too long and well settled to admit of doubt.

I. The first assignment of error is, that the indebtedness of the decedent being the first charge upon his estate (the lands of which he died seized), and such indebtedness being unascertained, the interest of Robert H. Hoge in same was undefined,

and this cloud should have been removed before there was a decree for sale.

The personalty of the decedent is first liable for payment of debts, and if that be insufficient, then the real estate, so far as necessary, is, by statute, made assets for the payment of debts. In this case it is time and again brought to the notice of the court that James F. Hoge died intestate, that he had considerable personal as well as the real estate in question, and that administration had been granted on his estate first to John C. Snidow, who died before fully administering, and that then said Robert H. Hoge was appointed administrator *de bonis non*, qualified as such and took charge of the personal estate unadministered by his predecessor; yet no account was ordered or step taken by the court to ascertain the personal estate with which said administrators were respectively chargeable, so as to apply the same so far as necessary to the payment of decedent's debts, and the balance, if any, to distribution among the heirs. While quite the contrary may be true, so far as appears by anything in the record, the personalty may be fully adequate to the payment of all of decedent's debts, and leave a balance for distribution, in which the share of Robert H. Hoge, one of the distributees, might be proximately or even fully equal to the discharge of all the debts against him; in either event it was a matter necessary to be settled before the interest in the land liable to his debts could be ascertained or the same subjected to the debts of Robert H. Hoge; for in one event the entire estate, real and personal, might have been required to pay decedent's debts, and then Robert H. Hoge would have had no interest to be subjected to his debts.

The rule is, whether the sale be by a trustee *in pais*, or a sale under a decree, where the court is invoked in the first instance to enforce encumbrances on lands, a sale without first ascertaining and settling what encumbrances are chargeable on the property, their amounts and the order in which they are entitled to payment would be wrong and calculated to do great injustice to

all parties interested. Such has been the ruling in many cases. *Horton* v. *Bond*, 28 Gratt. 815, and numerous cases, there cited. See also, *Shultz* v. *Hansbrough*, 33 Gratt. 567. In the latter case, Burks, J., delivering the opinion of the court, said : " The principle on which the decisions in both classes of cases is founded is, that a sale without first removing a cloud from the title and adjusting and settling rights in dispute, and without previously ascertaining and determining the liens and en cumbrances, the amounts, and priorities, tends to a sacrifice of the property, as to creditors by discouraging them from bidding, when they probably would have bid for the protection of their own interest, if the rights of all parties had been previously ascertained and fixed with reasonable certainty;" citing *Cole's Adm'r* v. *McRae*, 6 Rand. 644. It is, therefore, undeniable, that the circuit court plainly erred in proceeding to a decree for sale without first bringing the proper parties before the court and ascertaining these facts, essentially pre-requisite to a valid decree for sale.

II. The second assignment of error is, that the interest of said Robert H. Hoge being first liable for his proportionate part of the debts due by his father, James F. Hoge, deceased, the circuit court erred in decreeing a sale thereof for his individual indebtedness without first directing an account to be taken of said James F. Hoge's indebtedness and making provision for the payment of said Robert's proportionate part thereof, so as to relieve the appellants and others, heirs at law of said James F. Hoge, deceased, from the burden of having to pay said Robert's portion.

The proposition contended for by this assignment of error is in substance but a repetition of the principle announced in the first assignment of error. It might have gone further and pointed to the error of the decree in a more glaring aspect. For instance, the original bill on its face alleges that the decedent left a widow and seven children, all of whom were made parties defendant by name, and notwithstanding that allegation is no

where denied, or its accuracy questioned, yet *one-sixth* of the land of the decedent is ascertained by the decree to be the interest of the said Robert H. Hoge, and decreed to be sold; thus, palpably and without warrant, encroaching upon the interests of the other heirs for the benefit of Robert's creditors; this was beyond all question erroneous.  *Ryan's Adm'r* v. *McLeod & als.,* 32 Gratt. 367.

III. The only remaining question for consideration is the third assignment of error, to-wit: "The court having overruled one demurrer to the bill of J. E. and B. L. Hoge (the appellants here) should not have considered another demurrer to the same bill."  The object of pleading is to bring the parties to an issue.  If the same plea could again and again be offered, and the court required to consider it after it has once been rejected or overruled, all efforts to reach an issue and trial would be futile.  In this case the demurrer having been considered by the circuit court and overruled, it was clearly erroneous at a subsequent term to entertain the demurrant a second time, sustain the demurrer and dismiss the bill as it did by its decree of May 18th, 1881.  See Code 1873, ch. 167, § 33.

In any and every view in which the case may be considered, the two decrees appealed from are, in the respects aforesaid, manifestly erroneous, and must be reversed and annulled, and the cause remanded to the circuit court with directions to re-instate on the docket thereof the said cause of Joseph E. Hoge and B. L. Hoge against George G. Junkin, &c., to overrule the demurrer to said bill, require the pleadings to be so amended as to bring the personal representative of James F. Hoge, deceased, before the court, direct all proper accounts to be taken, so as to ascertain the real interest of Robert H. Hoge in the estate of said James F. Hoge, deceased, and bring said causes on to hearing together and do complete justice as near as may be to all parties interested.

DECREES REVERSED.